Dezso John LOKOS, Petitioner,

v.

Walter CAPPS, Warden, Respondent.

Gerald EATON, Petitioner,

v.

Walter CAPPS, Warden, Respondent.

Civ. A. Nos. 2678–N, 2776–N.

United States District Court,
M. D. Alabama, N. D.

June 19, 1974.

Robert D. Segall, Montgomery, Ala., for Lokos.

J. Paul Lowery, Montgomery, Ala., for Eaton.

David W. Clark, Asst. Atty. Gen., Montgomery, Ala., for Capps.

## ORDER

VARNER, District Judge.

These causes are submitted upon the Respondent's motions for summary judgment and the pleadings, affidavits and stipulations of the various parties.

Petitioners were convicted of murder and sentenced to death in the Circuit Court of Sumter County in March, 1964. These sentences have been corrected, and each is serving a life sentence. It has not been suggested that Petitioners have not exhausted their State remedies as required by Title 28, U.S.C. § 2254, and such an assertion would be in vain. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837; Whippler v. Balkcom, 342 F.2d 388 (5th Cir. 1965).

The primary thrust of each Petitioner's application for a writ of habeas corpus was that their constitutional rights guaranteed under the Fourteenth Amendment to the Constitution of the United States were denied to them by the trial court in the following manner: (1) Each Petitioner's pretrial motion for a change of venue was allegedly arbitrarily denied; (2) the trial court allegedly deprived Petitioners of due process of law by failing, pursuant to Petitioners' motions to appoint three experts in the field of mental disorders to examine them under applicable Alabama statutes; and (3) the confessions obtained from each Petitioner were allegedly involuntarily given and, as such, should not have been admitted into evidence.

## VENUE

A hearing was afforded each Petitioner by the trial court on their motions for change of venue, at which both Petitioners and prosecutors called a number of witnesses. All of the witnesses, including those called by Petitioners, gave testimony to the effect that in

their opinion the Petitioners could secure a fair and impartial trial in Sumter County. Thus, this Court finds that the trial court correctly denied the motions for a change of venue. See Campbell v. State, 257 Ala. 322, 58 So.2d 623; Denton v. State, 263 Ala. 311, 82 So.2d 406.

## PSYCHIATRIC EXAMINATION

Each Petitioner filed a motion for psychiatric evaluation in the trial court. Hearings were held, at the conclusion of which the trial court denied the motions.

██ It is clear under the law as presently interpreted that a defendant in a criminal proceeding is entitled, upon a sufficient showing, to a determination of his competence *to stand trial,* and absent such determination, he cannot be constitutionally tried and convicted. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; Lee v. State of Alabama, 5 Cir., 386 F.2d 97; Zackery v. Hale, D.C., 286 F.Supp. 237; Seibold v. Daniels, 337 F.Supp. 210 (M.D.Ala. 1972). However, the above proposition of law is not applicable in the cases at bar, for in these cases the Petitioners made their motions pursuant to Code of Alabama, Title 15, § 425 and not pursuant to Code of Alabama, Title 15, § 426.

As this Court stated in the *Seibold* opinion, supra:

"* * * It is noted that a trial judge may seek a psychiatric examination of an accused under the provisions of Title 15, § 425. However, as has been previously stated, the inquiry established under § 425, (the distinguish-and-resist-wrong test), is different from that required to test mental competency to stand trial (the understand-and-defend test), and, therefore, the trial judge would have to be careful in ordering such a report to specify the purposes of the examination."

Title 15, § 425 states, in pertinent part, as follows:

"§ 425. Investigation of sanity of person charged with capital offense. —Whenever it shall be made known to the presiding judge of a court by which an indictment has been returned against a defendant for a capital offense, by the written report of not less than three reputable specialist practitioners in mental and nervous diseases, appointed by the judge, or by written report of the superintendent of the Alabama state hospitals, that there is reasonable ground to believe that such defendant was insane either, at the time of the commission of such offense, or presently, it shall be the duty of the presiding judge to forthwith order that such defendant be delivered by the sheriff of the county to the superintendent of the Alabama state hospitals, who is charged with the duty of placing such defendant under the observation and examination of himself and two members of his medical staff to be named by him, constituting a commission on lunacy, with the view of determining the mental condition of such defendant and the existence of any mental disease or defect which would affect his present criminal responsibility, or his criminal responsibility at the time of the commission of the crime."

██ Under Alabama law, compliance with this statute has been construed to be discretionary with the trial court. Under § 425, supra, the Court is under no duty to appoint a lunacy commission or to procure the report of the Superintendent of the Alabama State Hospitals. The Court, in its discretion, simply has the right to seek these aids when such reports may be deemed helpful. Howard v. State, 278 Ala. 361, 178 So.2d 520; Divine v. State, 279 Ala. 291, 184 So.2d 628. The question of the appointment of medical specialists in mental disorders in response to a motion is solely within the discretion of the trial court. Coon v. State, 278 Ala. 581, 179 So.2d 710; Tiner v. State, 279 Ala. 126, 182 So.2d 859; and Seibold v. State, 287 Ala. 549, 253 So.2d 302, at 308.

The only evidence offered in support of the motion presented to the trial court by Petitioner Eaton was the testi-

mony of Eaton himself. This testimony showed no more than that Eaton had a limited education; that his father and mother separated when he was young; that he was raised by his grandparents; and that he never held a job for longer than six months.

■ This Court agrees with the State Trial Court that such evidence falls far short of showing a need for further examination. The trial court was acting within its discretion in refusing to appoint the specialists.

On February 20, 1964, the trial court set down for hearing Petitioner Lokos' motion to appoint specialists in mental and nervous diseases pursuant to Title 15, § 425, supra. Lokos' counsel initially sought to introduce a letter from the superintendent of a Wisconsin mental hospital which, although not admitted in evidence, was included in the record, having been marked for identification. The letter showed the Petitioner's background and contained the following statement:

"Mr. Lokos entered the Winnepago State Hospital on July 25, 1953, under a mentally ill commitment signed by the Racine County Judge. He was conditionally released on October 24, 1953, was returned from conditional release on January 19, 1954. He took unauthorized absence on April 6, 1953, was returned April 11, 1954, again took unauthorized absence on August 12, 1954, was returned August 15, 1954, and was conditionally released on August 14, 1955. His conditional release expired one year later. His diagnosis on all his admissions was Schizophrenic Reaction, Paranoid Type."

Lokos also testified at the hearing, and while he was unable to state the nature of his trouble, that is, the diagnosis made by the doctors of his mental condition, he did give evidence as to his several confinements in the Wisconsin mental institution and as to the nature of the treatment given him, which included electric shock treatment and insulin.

The State called a Marengo County jailer and a Marengo County deputy sheriff, both of whom were in contact with the Petitioner a short time after the commission of the crime while he was confined in the Marengo County jail. The State also called two State transfer agents who observed the Petitioner as he was being transferred from one place of confinement to another. Each of those witnesses stated that in his opinion the Petitioner was sane. The last witness called by the State was a Marengo County physician who talked with the Petitioner while he was confined in the Marengo County jail and who observed him while he was being questioned by the solicitor. Based upon those contacts, he expressed the opinion that Petitioner was sane. Following the hearing, the trial court overruled the motion for the court to appoint the specialists in mental and nervous diseases to examine the Petitioner Lokos.

■ This Court is of the opinion that there was sufficient evidence presented to the trial court which would enable it to exercise its discretion and thus deny each Petitioner's motion made pursuant to Title 15, § 425, supra. In addition to the evidence considered by the trial court, this Court is of the opinion that the fact that subsequent to the commission of the crime the Petitioners tried to conceal their dastardly act by disposing of their victims by throwing them into a well, shows unequivocally that they understood what they had done and merely tried to "cover their tracks" by disposing of primary evidence.

VOLUNTARINESS OF CONFESSION

The final contention made by each Petitioner is that his confession obtained shortly after his capture in Texas was involuntary and, therefore, unconstitutionally used by law enforcement officers to force each Petitioner to admit his guilt. Petitioners both alleged that, at the time of their arrest in Texas, they immediately asked for an attorney and that said request was denied. Petitioners further alleged that, during their

interrogation, officers slapped and beat them in such a violent manner as to force them to make statements concerning their involvement in the murder of Mr. Culpepper. These statements were later allegedly used by officers to gather other evidence which was used against Petitioners at trial and was further used to obtain additional confessions.

Even though these Petitioners were tried before the *Miranda* and *Escobedo* decisions,[1] the law prior to those decisions was that confessions could not be obtained by inflicting physical or mental abuse upon accused individuals. Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653; Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568; Hoffman v. United States, 341 U.S. 479, 71 S. Ct. 814, 95 L.Ed. 1118; Arndstein v. McCarthy, 254 U.S. 71, 41 S.Ct. 26, 65 L. Ed. 138; Counselman v. Hitchock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110. There is a clear charge that the confessions of both Eaton and Lokos were obtained by physical abuse. The Respondent's motions for summary judgment and affidavits tend to indicate that no such abuse took place. Lokos' affidavit and traverse tend, if believed, to indicate that it did take place.

While the record of post-trial procedures filed by both Lokos and Eaton demonstrates a sophistication as to court procedures which would make one doubt that either Petitioner would have for so long failed to have raised the issue of an involuntary confession, if any occurred, the question on motion for summary judgment is not the likelihood of success, but whether a material issue of fact remains for consideration. Rule 56(c) of the Federal Rules of Civil Procedure states that:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Even in absence of a traverse by Eaton of the motion for summary judgment, a genuine issue of fact remains as to the voluntariness of the confessions of these Petitioners. Respondent's motions for summary judgment are, therefore, due to be denied with regard to this aspect. Accordingly, it is the

Order, judgment and decree of this Court that the respondent's motions for summary judgment be, and the same are hereby, denied as to the question of the voluntariness of the confessions. It is the further

Order, judgment and decree of this Court that the respondent's motions for summary judgment be, and the same are hereby, granted as to the venue question and as to the psychiatric evaluation question.

---

1. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. The rule of *Miranda* is not retroactive. Johnson v. New Jersey, 384 U. S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.